UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JEROME WHITE HORSE JR.,<br><br>Defendant. | 3:20-CR-30058-RAL<br><br>OPINION AND ORDER DENYING MOTION FOR COMPASSIONATE RELEASE |

Jerome White Horse Jr. brings a motion for compassionate release, arguing his hypertension, age, and the COVID-19 pandemic are grounds for granting the motion. This Court finds these conditions fall short of establishing an extraordinary and compelling reason to grant release and denies the motion.

I.   **Facts and Procedural History**

In February 2021, White Horse pled guilty to voluntary manslaughter. Doc. 116; Doc. 254 at 2. The factual basis statement of the plea agreement set forth that the year before, on or about February 12, 2020, White Horse assaulted Lawrence Laffrey by beating him with a garden hoe and aided and abetted Samuel Frances White Horse in the commission of that offense. Doc. 117 at 1. The offense was committed in response to a quarrel, and White Horse's use of force was unjustified and unreasonable. Doc. 117 at 1–2. Laffrey suffered blunt force trauma to the head from the assault and died several days later from his injuries. Doc. 117 at 1. The guidelines range for the offense was 63 months to 78 months incarceration. Doc. 255 at 16.

1

On May 17, 2021, this Court sentenced White Horse to 63 months incarceration and three years of supervised release. Doc. 254 at 2; Doc. 255 at 1. White Horse is serving his sentence in a federal correctional facility in Big Spring, Texas. Doc. 255 at 1. His release date is scheduled for July 23, 2025. Doc. 254 at 2; Doc. 255 at 1. In November 2021, White Horse submitted a request for compassionate release to the Bureau of Prisons ("BOP"). Doc. 245-1 at 1; Doc. 255 at 1–2. The BOP denied his request a week later. Doc. 245-1 at 2; Doc. 254 at 5; Doc. 255 at 2.

On January 14, 2022, White Horse filed a pro se motion for compassionate release, Doc. 245, and the Federal Public Defenders Office for North Dakota and South Dakota has filed a supplement in support of the motion, Doc. 254. The First Step Act (FSA), Pub. L. No. 115-391, 132 Stat. 5194 (2018), allows an incarcerated person to seek compassionate release from a federal court if he or she has exhausted administrative remedies within the BOP. United States v. Rodd, 966 F.3d 740, 744 (8th Cir. 2020); United States v. Condon, 458 F. Supp. 3d 1114, 1117 (D.N.D. 2020). White Horse filed a request for compassionate release with the BOP on November 5, 2021, which was denied. Doc. 254 at 5. Therefore, White Horse has exhausted administrative remedies, and his claim is ripe for review.

White Horse is 62 years old and had served around 22% of his federal sentence at the time briefs were submitted. Doc. 245 at 1; Doc. 254 at 1–2; Doc. 255 at 1. He was vaccinated against the COVID-19 virus in February and March of 2021. Doc. 249 at 25. Doc. 254 at 4; Doc. 255 at 2. As of 2022, White Horse's medical records show that he suffers from glaucoma, hypertension, pain in his right knee, and lower back pain. Doc. 248 at 1, 10; Doc. 249 at 22, 109–11. An x-ray taken in October 2020 showed that White Horse has moderate osteoarthritis in his right knee, Doc. 253 at 37. White Horse's hypertension is monitored and treated with medication, Doc. 255 at 10, and he can walk for a substantial distance and does not have chest pain. Doc. 248 at 18.

White Horse also self-reported that he was formerly diagnosed and treated for prostate cancer. Doc. 138 at 16; Doc. 248 at 18, 21. White Horse alleges that he is suffering a reoccurrence of the cancer, but there is nothing in the medical record to support this beyond White Horse's self-reported diagnosis. Doc. 245 at 1; Doc. 248 at 18, 21; Doc. 254 at 5, 13–14; Doc. 255 at 9. The medical record also notes that White Horse told medical staff he has suffered from rectal and urinary bleeding because of his previous cancer treatments. Doc. 249 at 20; Doc. 254 at 13; Doc. 255 at 9.

White Horse claims that correctional staff will not acknowledge his cancer or allow him to undergo a cancer screening or receive treatment. Doc. 245 at 1; Doc. 254 at 1, 14. However, in November 2021, medical staff scheduled White Horse for a urology appointment on January 4, 2022 in response to White Horse's concerns about rectal bleeding, although it is not clear if White Horse attended this appointment. Doc. 249 at 23; Doc. 255 at 9; Doc. 258 at 6. Further, a federal medical center in Butner, North Carolina did a lab test on a sample from White Horse on March 31, 2022, although the results of the lab test are not summarized in the medical record. Doc. 249 at 84–86; Doc. 255 at 9–10.

## II.   Legal Standard

A "district court has broad discretion in determining whether proffered circumstances warrant" compassionate release under the First Step Act. United States v. Loggins, 966 F.3d 891, 893 (8th Cir. 2020). A court may grant a motion for compassionate release if it finds that, *"after considering the factors set forth in section 3553(a) to the extent that they are applicable, . . . extraordinary and compelling reasons warrant . . . a reduction"* in the petitioner's sentence. 18 U.S.C. § 3582(c)(1)(A) (emphasis added). To grant a motion for compassionate release, a court must also determine that the "defendant is not a danger to the safety of any other person or to the

community." U.S.S.G. § 1B1.13(B)(2). Ultimately, the petitioner bears the burden of establishing that a sentence reduction is warranted. See United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016).

### III. Discussion

#### A. 18 U.S.C. § 3553(a) sentencing factors

The section 3553(a) sentencing factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   (B) to afford adequate deterrence to criminal conduct;
>   (C) to protect the public from further crimes of the defendant; and
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the [Sentencing Commission] guidelines . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . .

18 U.S.C. § 3553(a).

White Horse claims the sentencing factors weigh in favor of his release, noting he was in a low criminal history category under the federal guidelines. Doc. 254 at 18–19; Doc. 258 at 9–10. The United States responds that the seriousness of White Horse's conviction weighs against granting his motion for compassionate release. Doc. 255 at 14–17. Here, the offense involved dragging the victim from a vehicle and beating him severely such that he died shortly thereafter.[1]

---

[1] White Horse's co-defendant went to trial and presented testimony from a forensic pathologist raising some question of whether the victim had been suffering from an aneurism causing his erratic behavior before the beating, so there is some question over whether the beating caused the death or perhaps hastened the death. Doc. 242-2 at 417–30.

Doc. 255 at 14–15. Although White Horse was in a low criminal history category under the sentencing guidelines, the United States notes that he has an extensive criminal history including convictions for another manslaughter charge years ago, resisting arrest, driving under the influence, and reckless driving. Doc. 255 at 15. A number of White Horse's prior convictions were too old to contribute criminal history points under the federal sentencing guidelines, and tribal court history does not count toward a criminal history category computation. Doc. 255 at 15–16.

Here, the recency and severity of the offense weigh against granting White Horse's motion for compassionate release. At this point, White Horse has only served around a quarter of his federal sentence, and the sentence initially imposed—the bottom end of the guideline range of just 63 months for voluntary manslaughter—reflected the seriousness of the offense, promoted deterrence, protected the public, avoided unwarranted sentence disparities, and properly accounted for White Horse's history and characteristics. When the factors present at sentencing have not changed, then these sentencing factors weigh in favor of denying a motion for compassionate release. See Rodd, 966 F.3d at 747 (quoting United States v. Rodd, No. CR 13-230 ADM/JSM, 2019 WL 5623973, at *4 (D. Minn. Oct. 31, 2019)) (affirming the denial of an incarcerated person's motion for compassionate release when "the Section 3553(a) factors present at sentencing have not changed").

### B. Extraordinary and Compelling Reason

The policy statement of the Sentencing Commission, U.S.S.G. § 1B1.13, states "extraordinary and compelling reasons" may exist in the following circumstances:

> (A) Medical Condition of the Defendant.
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not

5

      required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
      (ii) The defendant is--
          (I) suffering from a serious physical or medical condition,
          (II) suffering from a serious functional or cognitive impairment, or
          (III) experiencing deteriorating physical or mental health because of the aging process,
      that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
- (B) Age of the Defendant.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
- (C) Family Circumstances.--
  - (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
  - (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
- (D) Other Reasons.--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1(A)–(D) (cleaned up). Many courts, including this Court, have assumed that the authority granted to the Director of the BOP under U.S.S.G. § 1B1.13 cmt. n.1(D) is coextensive with federal judges. See Condon, 458 F. Supp. 3d at 1118 (collecting cases); United States v. Dillabaugh, No. 3:18-CR-30062-01-RAL, 2020 WL 3402392, at *3 (D.S.D. June 19, 2020) (stating that "the discretion given to the Director of the BOP in § 1B1.13 comment note 1(D), also allows federal judges to consider extraordinary and compelling reasons other than those specifically described" (cleaned up)).

      White Horse argues there are grounds for his release under subsection A(ii) and D, citing the risk of COVID-19 infection, his age, and his health conditions in support. Doc. 254 at 1–2, 10–18. Most of White Horse's supportive briefing discusses the health risks of COVID-19 exposure. White Horse notes that the COVID-19 infection rate in BOP custody is almost five

times higher than in the general population, and prison conditions are conducive to spreading the virus. Doc. 254 at 11, 15. As of April 21, 2022, there were 1,076 incarcerated persons at Big Spring correction facility where White Horse is housed. Doc. 254 at 2. Further, White Horse claims that his hypertension and history of prostate cancer put him at higher risk of complications from the COVID-19 virus. Doc. 254 at 11–15. And he points out that vaccines do not provide complete immunity from the COVID-19 virus and that vaccine efficacy decreases over time. Doc. 258 at 3–4.

The United States responds that White Horse has been vaccinated, and the risk of COVID-19 exposure itself is not an extraordinary and compelling reason to grant compassionate release. Doc. 255 at 3–4. Additionally, the BOP has worked to minimize the risk of COVID-19. Beginning at the start of the COVID-19 pandemic in March 2020, the BOP placed more than 41,150 incarcerated persons on home confinement to minimize health risks from COVID-19 exposure. Doc. 255 at 17. The BOP has also administered COVID-19 vaccines for over a year. Doc. 255 at 12. As of April 24, 2022, 347,980 total doses of COVID-19 vaccines had been administered by the BOP. Doc. 255 at 12. Incarcerated persons have also been offered booster shots. Doc. 255 at 13. Big Spring correctional facility had no confirmed COVID-19 infections among incarcerated persons and staff as of April 24, 2022. Doc. 255 at 1. And further, White Horse's medical needs are being treated while he has been incarcerated. Doc. 255 at 13.

White Horse does not qualify for compassionate release under U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). He is not "suffering from a serious physical or medical condition, . . . a serious functional or cognitive impairment, or [is not] experiencing deteriorating physical or mental health because of the aging process . . . *that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he or she is not expected to*

7

*recover.*" U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). See United States v. Rodriguez, 424 F. Supp. 3d 674, 682 (N.D. Cal. 2019) (holding a petitioner did not satisfy U.S.S.G. § 1B1.13 cmt. n.1(A) when he "was capable of independently performing activities of daily living"). Therefore, this Court now looks to whether subsection D applies, stating that compassionate release may be granted for reasons "other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt. n.1(D).

"[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). "Though certainly relevant, the threat of contracting COVID-19 in the prison environment, still real at this time, is not by itself sufficient reason to modify a lawfully imposed prison sentence." United States v. Marcussen, 15 F.4th 855, 858 (8th Cir. 2021). However, some courts "have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." United States v. Feiling, 453 F. Supp. 3d 832, 841 (E. D. Va. 2020); see also United States v. Newton, 996 F.3d 485, 489–91 (7th Cir. 2021) (vacating a district court's denial of compassionate release and holding that "the district court should have assessed [the defendant's] situation not only in light of each of his comorbidities individually but also cumulatively").

Of White Horse's medical conditions, hypertension is associated with greater complications from a COVID-19 infection. United States v. Contreras, 504 F. Supp. 3d 1052, 1059 (D.S.D. 2020); *COVID-19 -- Medical Conditions*, CTR. FOR DISEASE CONTROL AND PREVENTION (updated May 2, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-

precautions/people-with-medical-conditions.html. "[T]he relationship between hypertension and elevated risk from COVID-19 is not fully understood. Some experts say that high blood pressure alone is not a risk factor, but that it may be a risk factor when combined with another underlying health condition. . . . Other experts believe that COVID-19 strains the heart, making people with hypertension more vulnerable to the disease." Id. at 1059–60 (cleaned up and citations omitted). Older adults are also at greater risk of death or complications from COVID-19. Contreras, 504 F. Supp. 3d at 1059.

Here, evidence of White Horse's heightened vulnerability to the COVID-19 virus due to his age and hypertension are not sufficient grounds to grant compassionate release—especially considering that White Horse has been vaccinated against the virus, White Horse can obtain a vaccine booster shot, the BOP's efforts to curtail the spread of the virus, and that there are no recently confirmed cases in the federal detention center where White Horse is housed. See United States v. Thomas, 471 F. Supp. 3d 745, 748–50 (W.D. Va. 2020) (stating courts have granted compassionate release to incarcerated persons with hypertension "only when these individuals also suffered from other" serious underlying medical conditions).

Neither are White's Horse's current and chronic medical conditions—glaucoma, hypertension, arthritis, and back pain—grounds for compassionate release. Many of these conditions are common and associated with aging, and White Horse is receiving medical care for these conditions while incarcerated. See United States v. Weidenhamer, No. CR-16-01072-001-PHX-ROS, 2019 WL 6050264, at *5 (D. Ariz. Nov. 8, 2019) ("Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release."); United States v. Dana, 467 F. Supp. 3d 962, 968 (D. Or. 2020) (same); United States v. Ayon-Nunez, No. 1:16-CR-00130-DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) (same).

9

## IV. Conclusion and Order

For the reasons discussed, it is hereby

ORDERED that White Horse's motion for compassionate release under the First Step Act, Doc. 245, is denied without prejudice to refiling if White Horse's health conditions worsen.

DATED this 16th day of June, 2022.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE